IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MELISSA GALE, | § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 22-1329 _____ |
| MISSION HOSPICE OF SAN ANTONIO, LLC, | § § § | |
| Defendant. | § § | |

**PLAINTIFF MELISSA GALE'S ORIGINAL COMPLAINT
AND JURY DEMAND**

This is an action retaliatory discharge under the False Claims Act, 31 U.S.C. Section 3730(h). Plaintiff Melissa Gale was employed by Defendant Mission Hospice of San Antonio, LLC. as the Quality Assurance Manager from April of 2022 shortly after Defendant opened for business and was discharged on July 15, 2022. In the weeks leading up to discharge from employment, Plaintiff repeatedly made complaints to Defendant's senior leadership that Defendant was violating the Medicare law and regulations with respect to the recruiting, processing, and retention of hospice patients, and that billing Medicare for services provided to many patients was unlawful under the circumstances. Plaintiff contends that she was discharged from employment in retaliation for her protected complaints.

**Parties**

1. Plaintiff Melissa Gale is an individual residing at 9107 Park Trail, San Antonio, Texas 78250. She may be served with papers in this case through the undersigned counsel.

1

2. Defendant Mission Hospice of San Antonio, LLC is a limited partnership organized under the laws of the State of Texas. According to records on file with the Texas Secretary of State, it maintains its principal place of business at 19240 Redland Rd. #300, San Antonio, Texas 78259. It may be served with process through its registered agent, Business Filings Incorporated, at 701 Brazos Street, Ste. 720, Austin, Texas 78701.

## Jurisdiction and Venue

3. The Court possessed subject matter jurisdiction over this case because Plaintiff's claims are brought under a federal statute, the False Claims Act. The Court possesses personal jurisdiction over Defendant because Defendant constantly conducts business in Texas and maintains offices in Texas. Venue is proper in the Western District of Texas because all of the events giving rise to Plaintiff's claims occurred within the geographic confines of the San Antonio Division.

## Factual Background

4. Defendant is a hospice operating in the San Antonio, Texas Metropolitan area. According to records filed by Defendant with the Texas Secretary of State, Defendant was formed on January 31, 2022.

5. Plaintiff Melissa Gale commenced work as Defendant's Quality Assurance Manager in April of 2022, approximately three weeks after Defendant started admitting patients. Defendant's administrator was James "Rusty" Hughes. The Director of Nursing was Troi Woolridge. Plaintiff understands that Defendant was owned by several investors. Plaintiff further understands that the investor with the largest share of ownership was Nick Ortega.

6. In just five or six weeks of commencing operations, Defendant had enrolled approximately forty patients into its hospice service. Approximately half of those, perhaps

more, did not qualify for service under the applicable Medicare rules. Many patients lacked clinical documentation necessary for enrollment in hospice. Others simply did not qualify based on their admitting diagnoses. Defendant often used a catch-all diagnosis of end-stage heart failure.

7.      Indeed, as early as the week of April 25, Plaintiff was informed—in response to her report that she had discovered a patient who had been admitted without required clinical documentation—that they do not have non-admits, as everyone is admitted because everyone deserves hospice. The director of nursing made a similar statement to Plaintiff during the week of May 9, when he stated that he had been instructed by Frankie Mirales, the "President of Marketing and Sales" and a minority investor, to admit everyone. Mr. Mirales confirmed this "rule" himself during the week of May 16, when he told Plaintiff, among other things, that he is running the business and that he decides who is admitted onto the hospice service. The administrator commented to Plaintiff that he was willing to admit everyone to avoid a confrontation Mr. Mirales.

8.      This was, however, not the only type of Medicare violation engaged in by Defendant. Plaintiff also observed that Defendant failed to conduct proper background and license checks with respect to some employees. For instance, one nurse aide was working with an expired license. This too violated Medicare rules. Then there was the issue of Defendant enticing patients to enroll in Defendant's hospice service with promises to pay for all of those patients' medications, not just those related to the terminal illness. The same held true regarding supplies.

9.      Defendant contracted with a medical director who did not seem to take his job seriously in all respects. The medical director failed to conduct proper IDG meetings, including not reviewing all patients during IDG meetings and not timely signing required medical orders.

10. Plaintiff also observed failures by Defendant's staff to comply with Medicare regulations regarding the preparation and implementation of patient plans of care as well as the frequency of nursing visits, which were not being complied with in some cases.

11. Almost from the get-go, Plaintiff reported and complained of each of these illegal actions. Plaintiff repeatedly complained to the administrator, the director of nursing, the alternate director of nursing, and to Mr. Mirales regarding the above-referenced conduct. Plaintiff specifically complained that Defendant's actions violated the Medicare rules, that the actions were illegal, and may constitute fraud against the government. Plaintiff was told that this was none of her business and that she needed to "stay in her lane."

12. Thereafter, Plaintiff complained to some of the investors about what she was observing, again repeating that Defendant's actions violated applicable Medicare rules and that the conduct could be considered fraud. Management and Mr. Mirales questioned Plaintiff about what she had talked about with the investors. On or about June 23, Mr. Mirales remarked that if he was fired he would take the patients and the physicians with him. Mr. Mirales also reiterated that all patients deserve hospice and no one should not be admitted. On the following day, Mr. Mirales stated to Plaintiff that there were "a lot of snakes in the office," which Plaintiff took as an ominous reference to her complaints to the investors.

13. On Friday, July 8, Plaintiff was confronted by Mr. Mirales, who was irate with Plaintiff because of her complaints regarding Medicare violations. Specifically, Mr. Mirales was furious because, due to Plaintiff's complaints, Defendant was going to have to discharge patients because they did not qualify for hospice under Medicare rules. In Mr. Mirales' words, "someone has gotten too big for their britches."

14. On or about July 10, 2022, Defendant discharged its medical director. On July

15, 2022, Plaintiff was terminated from employment. The justification given to Plaintiff was that Nick Ortega, one of the investors in Defendant, was now Defendant's sole owner.

15. Plaintiff thereafter learned that the medical director had been rehired and that other individuals who had previously been discharged/demoted for engaging in actions that violated Medicare rules were rehired. In the case of Mr. Hughes, he was re-promoted to the position of administrator.

**Cause of Action: Retaliatory Discharge under 31 U.S.C. Section 3130(h)**

16. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 15 supra.

17. The False Claims Act imposes liability on any "person" who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval [by the U.S. Government]," "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," or conspires to engage in any such false/fraudulent acts. 31 U.S.C. Section 3130(a).

18. Under 31 U.S.C. Section 3130(h), the anti-retaliation provision of the False Claims Act, "[a]ny employee . . . shall be entitled to all relief necessary to make that employee . . . whole, if that employee . . . is discharged . . . because of lawful acts done by the employee . . . or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of [the False Claims Act]."

19. Plaintiff engaged in protected activity under 31 U.S.C. Section 3130(h) when she repeatedly complained to management, and even to Defendant's investors, that Defendant was engaging in activities related to patient recruitment, patient qualification and enrollment, and required clinical documentation that violated the Medicare laws and regulations and that this conduct must cease. Plaintiff went so far as to characterize Defendant's actions as illegal

and as fraud against the Government.

20. Plaintiff pleads that Defendant discharged her from employment because of her complaints under Section 3130(h). As a result of this illegal discharge from employment, Plaintiff has suffered lost wages and benefits, emotional distress and mental anguish, humiliation, embarrassment, and loss of enjoyment of life. Plaintiff now sues for these damages.

## Jury Demand

10. Plaintiff demands a trial by jury.

## Conclusion and Prayer

8. Plaintiff prays that upon final judgment she be awarded the following:

   a. Lost wages and benefits in the past and in the future;

   b. Liquidated damages;

   c. Special damages for emotional distress, mental anguish, humiliation, embarrassment, and loss of enjoyment of life;

   d. Reinstatement or front pay;

   e. Attorney fees;

   f. Litigation expenses

   g. Costs of court;

   h. Pre- and post-judgment interest; and

   i. All other relief to which she is entitled.

Respectfully submitted,

*Michael V. Galo, Jr.*

Michael V. Galo, Jr.
State Bar No. 00790734
GALO LAW FIRM, P.C.
4230 Gardendale, Bldg 401
San Antonio, Texas 78229
Telephone: 210.616.9800
Facsimile: 210.616.9898
Email: mgalo@galolaw.com
ATTORNEY FOR PLAINTIFF
MELISSA GALE