IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MELISSA GALE, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 5:22-cv-01329-XR |
| MISSION HOSPICE OF SAN ANTONIO, LLC, | § § § § | |
| Defendant. | § | |

## PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Plaintiff Melissa Gale (hereinafter referred to as "Plaintiff" or "Gale") files this Motion for Default Judgment and shows the following:

**Introduction**

On December 13, 2022, Plaintiff filed this False Claims Act retaliation action (31 U.S.C. Section 3730(h)) against Defendant, Mission Hospice of San Antonio LLC. Plaintiff alleges that she was discharged from employment because she complained about and attempted to stop Defendant's practices that violated applicable Medicare laws and regulations.

Plaintiff was employed by Defendant as a Quality Assurance Manager from April of 2022 shortly after Defendant opened for business and was discharged on July 15, 2022. In weeks leading up to her discharge from employment, Plaintiff repeatedly made complaints to Defendant's senior leadership that Defendant was violating Medicare law and regulations with respect to the recruiting, processing, and retention of hospice patients, and that billing Medicare for services

provided to many patients was unlawful under the circumstances. Plaintiff contends that she was discharged from employment in retaliation for her protected complaints.

### Defendant's Failure to Answer after Proper Service

On December 29, 2023 Defendant was served and the executed returned was filed with the Court on January 2, 2023. Defendant's answer was due on January 19, 2023. To date, no answer has been filed. Plaintiff requests that the Court take judicial notice of the Return of service filed January 2, 2023 showing service on December 29, 2023.

### Factual Background

The following facts are taken from Plaintiff's Declaration attached as Exhibit 1.

Plaintiff Melissa Gale commenced work as Defendant's Quality Assurance Manager in April of 2022, approximately three weeks after Defendant started admitting patients. Defendant's administrator was James "Rusty" Hughes. The Director of Nursing was Troi Woolridge. Plaintiff understands that Defendant was owned by several investors. Plaintiff further understands that the investor with the largest share of ownership was Nick Ortega.

In just five or six weeks of commencing operations, Defendant had enrolled approximately forty patients into its hospice service. Approximately half of those, perhaps more, did not qualify for service under the applicable Medicare rules. Many patients lacked clinical documentation necessary for enrollment in hospice. Others simply did not qualify based on their admitting diagnoses. Defendant often used a catch-all diagnosis of end-stage heart failure.

Indeed, as early as the week of April 25, Plaintiff was informed—in response to her report that she had discovered a patient who had been admitted without required clinical documentation—that they do not have non-admits, as everyone is admitted because everyone deserves hospice. The director of nursing made a similar statement to Plaintiff during the week of

May 9, when he stated that he had been instructed by Frankie Mireles, the "President of Marketing and Sales" and a minority investor, to admit everyone. Mr. Mireles confirmed this "rule" himself during the week of May 16, when he told Plaintiff, among other things, that he is running the business and that he decides who is admitted onto the hospice service. The administrator commented to Plaintiff that he was willing to admit everyone to avoid a confrontation Mr. Mireles.

This was, however, not the only type of Medicare violation engaged in by Defendant. Plaintiff also observed that Defendant failed to conduct proper background and license checks with respect to some employees. For instance, one nurse aide was working with an expired license. This too violated Medicare rules. Then there was the issue of Defendant enticing patients to enroll in Defendant's hospice service with promises to pay for all of those patients' medications, not just those related to the terminal illness. The same held true regarding supplies.

Defendant contracted with a medical director who did not seem to take his job seriously in all respects. The medical director failed to conduct proper IDG meetings, including not reviewing all patients during IDG meetings and not timely signing required medical orders.

Plaintiff also observed failures by Defendant's staff to comply with Medicare regulations regarding the preparation and implementation of patient plans of care as well as the frequency of nursing visits, which were not being complied with in some cases.

Almost from the get-go, Plaintiff reported and complained of each of these illegal actions. Plaintiff repeatedly complained to the administrator, the director of nursing, the alternate director of nursing, and to Mr. Mireles regarding the above-referenced conduct. Plaintiff specifically complained that Defendant's actions violated the Medicare rules, that the actions were illegal, and may constitute fraud against the government. Plaintiff was told that this was none of her business and that she needed to "stay in her lane."

Thereafter, Plaintiff complained to some of the investors about what she was observing, again repeating that Defendant's actions violated applicable Medicare rules and that the conduct could be considered fraud. Management and Mr. Mirales questioned Plaintiff about what she had talked about with the investors. On or about June 23, Mr. Mirales remarked that if he was fired he would take the patients and the physicians with him. Mr. Mirales also reiterated that all patients deserve hospice and no one should not be admitted. On the following day, Mr. Mirales stated to Plaintiff that there were "a lot of snakes in the office," which Plaintiff took as an ominous reference to her complaints to the investors.

On Friday, July 8, Plaintiff was confronted by Mr. Mireles, who was irate with Plaintiff because of her complaints regarding Medicare violations. Specifically, Mr. Mireles was furious because, due to Plaintiff's complaints, Defendant was going to have to discharge patients because they did not qualify for hospice under Medicare rules. In Mr. Mireles' words, "someone has gotten too big for their britches."

On or about July 10, 2022, Defendant discharged its medical director. On July 15, 2022, Plaintiff was terminated from employment. The justification given to Plaintiff was that Nick Ortega, one of the investors in Defendant, was now Defendant's sole owner.

Plaintiff thereafter learned that the medical director had been rehired and that other individuals who had previously been discharged/demoted for engaging in actions that violated Medicare rules were rehired. In the case of Mr. Hughes, he was re-promoted to the position of administrator.

### Request for Default Judgment

No answer has been filed, and the return of service has been on file for the appropriate time. The evidence offered by Plaintiff establishes that she was discharged from employment

because of her protected activities under the False Claims Act. Therefore, Plaintiff is entitled to a default judgment.

## Damages

A victim of retaliatory discharge is entitled to the following relief: (a) reinstatement; (b) two times the amount of back pay; (c) interest on the back pay; and (d) compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorney fees. 31 U.S.C. Section 3730(h)(2). Courts have held that "special damages" includes an award for mental anguish and emotional distress. *E.g., Neal v. Honeywell,* 191 F.3d 827, 831-32 (7th Cir. 1999); *Miniex v. Houston Hous. Auth.*, 400 F. Supp.3d. 620, 658-59 (S.D. Tex. 2019).

With respect to back pay, Plaintiff was discharged on July 15, 2022 and has been unemployed since that date despite her efforts to find comparable work. Plaintiff's rate of pay while employed by Defendant was $89,000 per year, which translates to $1711.54 per week. Thirty-three weeks have passed since Plaintiff's discharge. Thus, her lost wages to March 2, 2023 are $56,480.82. Section 3730(h)(2) mandates "2 times the amount of back pay" plus "interest on the back pay. Therefore, Plaintiff requests $112,961.64 through March 2, 2023 plus interest. Gale Decl., para. 12, Ex. 1.

Plaintiff also seeks reinstatement to her prior position with the same pay and benefits, or in the alternative, an award of front pay. *See* 31 USC Section 3730(h)(2) ("Relief under paragraph (1) shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination"). Although front pay is not an enumerated remedy under Section 3730(h), the federal courts do recognize that it may be an appropriate remedy, especially when reinstatement is not feasible. *E.g., Miniex v. Houston Housing Auth.*, 400 F.

Supp.3d 620, 656 (S.D. Tex. 2019) (awarding front pay); *Weihua Huang v. Rector and Visitors of Univ. of Va.*, 2013 WL 865845, *13 (W.D. Va., Mar. 7, 2013) (collecting cases). To date, since her discharge, Plaintiff has unable to replace her employment. Gale Decl. para. 12, Ex. 1. Should the Court order front pay in lieu of reinstatement, Plaintiff requests that she be awarded at least six months of front pay (26 weeks or $44,500.00) to give her adequate time to procure comparable employment.

Section 3730(h)(2) also states that Plaintiff has suffered substantial emotional distress in this case. She is diagnosed with anxiety and is prescribed Lorazepam. Since her discharge, Plaintiff has suffered, and continues to suffer from, substantial disruptions in her sleep. Plaintiff reports that she frequently wakes from her sleep due to the anxiety and distress she suffers from the termination. Due to her termination, Plaintiff becomes very anxious when leaving her home because she fears encountering people she knows. She worries that acquaintances will ask her about her employment with Defendant, which would cause her to have to explain why she is no longer employed. Gale Decl., para. 13, Ex. 1. Plaintiff believes that an award of compensatory damages in the amount of $50,000.00 is appropriate in this case.

Section 216(b) also provides for the recovery of reasonable attorney fees and costs of court. In this case, the undersigned counsel has carefully kept track of all hours worked on this case, including meeting and interviewing Plaintiff and two other witnesses, drafting, revising, and finalizing the lawsuit, supervising the filing and service of process, drafting correspondence to Defendant's registered agent after Defendant failed to answer, corresponding with the clerk's office and drafting this Motion for Default Judgment. To date, the undersigned counsel has expended 18.92 hours on this case. The undersigned counsel customarily charges his clients $350.00 per hour for his work. Based on the undersigned experience, this hourly rate is reasonable

in the Bexar County area given the undersigned's level of training and experience as a board-certified labor and employment lawyer with 28 years of practice. *See* Michael Galo Declaration, Exhibit 2. The undersigned's qualifications are detailed in the attached declaration. *See* Ex. 3. The total attorney fees for the work performed in this case comes to $6626.68. Plaintiff requests that the Court award Plaintiff this amount as reasonable and necessary attorney fees as well as $497.00 in costs of court ($402.00 filing fee plus $95.00 service of process fee).

A proposed Final Judgment is attached as Exhibit 4.

Plaintiff also seeks all other relief to which she is entitled.

                Respectfully submitted,

                /s/ Michael V. Galo, Jr.
                Michael V. Galo, Jr.
                State Bar No. 00790734
                GALO LAW FIRM, P.C.
                4230 Gardendale, Bldg. 401
                San Antonio, Texas 78229
                Telephone: 210.616.9800
                Facsimile: 210.616.9898
                ATTORNEYS FOR PLAINTIFF
                MELISSA GALE

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing document has been served on the registered agent, Demi Ortega, on this 3rd day of March, 2023, as follows:

Ms. Demi Ortega
14100 San Pedro #602
San Antonio, Texas 78232
**via First-Class Mail**

                                                /s/ Michael V. Galo, Jr.
                                                MICHAEL V. GALO, JR.