# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MELISSA GALE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 5:22-cv-01329-XR |
| | § | |
| MISSION HOSPICE OF SAN ANTONIO, LLC, | § | |
| | § | |
| Defendant. | § | |

## DECLARATION OF MELISSA GALE

STATE OF TEXAS        §
                      §
COUNTY OF BEXAR       §

My name is Melissa Gale, I am over the age of eighteen, am competent to testify, and have personal knowledge of the following:

1. I commenced work as the Quality Assurance Manager of Mission Hospice in April of 2022, approximately three weeks after Mission started admitting patients. The administrator was James "Rusty" Hughes. The Director of Nursing was Troi Woolridge. I understand that Mission Hospice was owned by several investors. I further understand that the investor with the largest share of ownership was Nick Ortega.

2. In just five or six weeks of commencing operations, Mission Hospice had enrolled approximately forty patients into its hospice service. Approximately half of those, perhaps more, did not qualify for service under the applicable Medicare rules. Many patients lacked clinical documentation necessary for enrollment in hospice. Others simply did not qualify based on their admitting diagnoses. The Company often used a catch-all diagnosis of end-stage heart failure.

3. Indeed, as early as the week of April 25, I was informed—in response to my report that I had discovered a patient who had been admitted without required clinical documentation—that they do not have non-admits, as everyone is admitted because everyone deserves hospice. The director of nursing made a similar statement to me

during the week of May 9, when he stated that he had been instructed by Frankie Mireles, the "President of Marketing and Sales" and a minority investor, to admit everyone. Mr. Mireles confirmed this "rule" himself during the week of May 16, when he told me, among other things, that he is running the business and that he decides who is admitted onto the hospice service. The administrator commented to me that he was willing to admit everyone to avoid a confrontation with Mr. Mireles.

4. This was, however, not the only type of Medicare violation engaged in by Mission Hospice. I also observed that Mission Hospice failed to conduct proper background and license checks with respect to some employees. For instance, one nurse aide was working with an expired license. This too violated Medicare rules. Then there was the issue of Mission enticing patients to enroll in its hospice service with promises to pay for all of those patients' medications, not just those related to the terminal illness. The same held true regarding supplies.

5. Mission Hospice contracted with a medical director who did not seem to take his job seriously in all respects. The medical director failed to conduct proper IDG meetings, including not reviewing all patients during IDG meetings and not timely signing required medical orders.

6. I also observed failures by Mission's staff to comply with Medicare regulations regarding the preparation and implementation of patient plans of care as well as the frequency of nursing visits, which were not being complied with in some cases.

7. I reported and complained of each of these illegal actions. I repeatedly complained to the administrator, the director of nursing, the alternate director of nursing, and to Mr. Mireles regarding the above-referenced conduct. I specifically complained that the Hospice's actions violated the Medicare rules, that the actions were illegal, and may constitute fraud against the government. I was told that this was none of my business and that I needed to "stay in my lane."

8. Thereafter, I complained to some of the investors about what I was observing, again repeating that Mission's actions violated applicable Medicare rules and that the conduct could be considered fraud. Management and Mr. Mirales questioned me about what I had talked about with the investors. On or about June 23, Mr. Mirales remarked that if he was fired he would take the patients and the physicians with him. Mr. Mirales also reiterated that all patients deserve hospice and no one should not be admitted. On the following day, Mr. Mirales stated to me that there were "a lot of snakes in the office," which I took as an ominous reference to my complaints to the investors.

9. On Friday, July 8, I was confronted by Mr. Mireles, who was irate with me because of my complaints regarding Medicare violations. Specifically, Mr. Mireles was furious because, due to my complaints, Mission was going to have to discharge patients because they did not qualify for hospice under Medicare rules. In Mr. Mireles' words, "someone has gotten too big for their britches."

10. On or about July 10, 2022, the Company discharged its medical director. On July 15, 2022, I was terminated from employment. The justification given to me was that Nick Ortega, one of the investors in Mission Hospice, was now Mission's sole owner.

11. I thereafter learned that the medical director had been rehired and that other individuals who had previously been discharged/demoted for engaging in actions that violated Medicare rules were rehired. In the case of Mr. Hughes, he was re-promoted to the position of administrator.

12. I have not been able to replace my employment with Mission Hospice. My rate of pay while employed by Mission Hospice was $89,000 per year, which translates to $1,711.54 per week. Thirty-three weeks have passed since I was discharged. Thus, my lost wages to March 2, 2023 are $56,480.82.

13. I have suffered substantial emotional distress in this case. I am diagnosed with anxiety and is prescribed Lorazepam. Since my discharge, I have suffered, and continue to suffer from, substantial disruptions in my sleep. I frequently wake from my sleep due to the anxiety and distress I suffered from my termination. Due to my termination, I've becomes very anxious when leaving my home because I fear encountering people I know. I worry that acquaintances will ask me about my employment with Mission Hospice, which would cause me to have to explain why I am no longer employed.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 2nd day of March 2023.

_____
Melissa Gale